————o————

JAMES CONROY, Appellant, *vs.* THE VULCAN IRON WORKS, Respondent.

1. *Damages—Risks incident to employment, master not responsible for.*—A master is not responsible for injuries happening to his servant from the usual and ordinary risks incident to the employment in which he is engaged. In all such cases the contract is presumed to be made with reference to those risks.

2. *Damages—Instrumentalities used by servant—When glaringly dangerous he cannot recover—Rule where they may be used with great caution different—Question of caution for jury, when.*—Where the instrumentality which the servant is required to perform service with is so glaringly and palpably dangerous that a man of common prudence would not use it, and with the utmost care and skill danger is still imminent, the master cannot be held responsible for the damage resulting therefrom, although the servant may have notified him of the danger, and he may have promised to repair it. But where the machinery and appliances though dangerous, are not of such a character that they may not reasonably be used by the exercise of skill and diligence, and the proper circumspection is employed, the rule is different. And whether he exercises the caution requisite under the circumstances, is a question for the jury.

3. *Damages—Negligence—Giving way of plank at coal hoist—Notification to company of danger—Promise of repair—Rule as to liability.*—Where boards placed between the rails of an inclined tramway on which cars ran at a "coal hoist," being insecurely fastened, gave way under a servant of the company owning the same, while he was engaged in the line of his employment in detach-

| 62 | 35 |
| 96 | 212 |

| 62 | 35 |
| 46a | 42 |

| 62 | 35 |
| 50a | 269 |
| 52a | 58 |

| 62 | 35 |
| 117 | 487 |

| 62 | 35 |
| 58a | 330 |

| 62 | 35 |
| 62a | 194 |

| 62 | 35 |
| 42a | 531 |
| 43a | 56 |
| 43a | 64 |

| 62 | 35 |
| 133 | 477 |
| 67a | 393 |

| 62 | 35 |
| 69a | 261 |

| 62 | 35 |
| 72a | 590 |

| 62 | 35 |
| 76a | 519 |

| 62 | 35 |
| 155 | 384 |

| 62 | 35 |
| 85a | 493 |

| 62 | 35 |
| 166 | 464 |

| 62 | 35 |
| 93a | ³162 |

| 62 | 35 |
| 95a | ²117 |
| 95a | ²119 |
| 96a | ²382 |
| 96a | ²679 |
| 97a | ²482 |

ing one of the cars while in motion from a wire rope, and he was in consequence run over and injured, it appeared that he had discovered the condition of the track two or three days before, and reported the same to his superior officer, but was assured that he would "make the proper repairs," but could "not do everything at once" It also appears that the timbers had been used and were still being used at the time of the casualty. *Held*, that the servant had a right to presume that the company would take proper steps to secure his safety, and that the company was responsible.

### *Appeal from St. Louis Circuit Court.*

*J. C. McGinnis, with Finkelnburg & Rassieur*, for Appellant.

The failure of the respondent to comply with the assurance that the defect should be remedied, amounted to gross neglect on the part of respondent, which made it liable for any injury resulting therefrom. The platform was not so obviously and immediately dangerous that a man of common prudence would have refused to use it. Whether such was the fact was however a question which ought to have been submitted to the jury. (Patterson vs. Pittsburgh R. R. Co., 76 Penn. St., 389.)

*Cline, Jamison & Day*, for Respondent.

The plaintiff knew the danger to which he was exposing himself, and continued in the service of the defendant, and therefore cannot recover. (Devitt vs. Pacific R. R., 50 Mo., 302; Wright vs. N. Y. Central R. R. Co., 25 N. Y., 566; McGlynn vs. Brodie, 31 Cal., 376; Davis vs. Detroit and Milwaukee, 20 Mich., 105; Thayer vs. St. Louis, A. & T. R. R. Co., 22 Ind., 26.)

WAGNER, Judge, delivered the opinion of the court.

The court in this case gave an instruction that there was no evidence upon which the plaintiff could recover, whereupon he took a non-suit, and there being a refusal to set the same aside, an appeal was taken to this court.

It was alleged in the petition that the plaintiff was in the employ of the defendant, in and about the coal hoist, and through the defective construction of the hoist he was thrown

under a coal car and injured ; that the injury resulted to him while he was in the discharge of his duty, and was caused directly by the fault, want of care, and negligence of the defendant in not securely fastening down the boards or timbers placed within the track of the coal cars, upon which plaintiff had to stand in unhitching them.

The evidence submitted by the plaintiff showed that two days previous to the accident he had observed that the timbers were not secure, and had reported to the superintendent that there was danger in leaving them in that situation, and the officer told him that he would make the proper repairs, but he could not do everything at once.

Under the circumstances, we think, the action of the court in refusing to let the case go to the jury, was erroneous. A master is not responsible for injuries happening to his servant from the usual and ordinary risks incident to the employment in which he is engaged: for in all such cases the contract is presumed to be made with reference to such risks. Thus, in Devitt vs. Pacific Railway (50 Mo., 302) the plaintiff's son was a brakeman on a freight train, and was killed while he was at the brake on the top of a freight car, in passing through a bridge, the cross-timbers on the top of the bridge being so low as to strike his head. The accident occurred in the daytime, and it was shown that deceased had been in defendant's employ about three weeks ; that he had passed this bridge every day during that time ; that he had repeatedly been warned to look out for the bridge, and that when last seen, just before reaching the bridge, he was sitting upon his brake facing it. Upon these facts it was held that he was guilty of such negligence as to preclude a recovery ; that he was apprised and warned of the danger, and that by continuing in the service, he took upon himself the risk.

Where the instrumentality which the servant is required to perform service with is so glaringly and palpably dangerous that a man of common prudence would not use it, the master could not be held responsible for the damage resulting

therefrom. In such a case the servant would be guilty of
heedlessly and recklessly exposing himself to danger, and he
would have to abide the consequences. But where the ser-
vant incurs the risk of machinery which, though dangerous,
is not so much so as to threaten immediate injury, or where
it is reasonable to suppose or believe that it may be safely
used by great caution or skill, a different rule should prevail.

In a case in the exchequer the plaintiff was employed by
the defendant to oil dangerous machinery. At the time the
plaintiff entered upon this service the machinery was fenced,
but this fence became broken by accident. The plaintiff
complained of the dangerous state of the machinery, and the
defendant promised that the fencing should be restored.
The plaintiff, without any fault on his part, was severely in-
jured in consequence of the machinery remaining unfenced,
and it was held that the defendant was liable for the injury.
(Clark vs. Holmes, 7 Hurlst. & N., 937, affirming Holmes vs.
Clark, 6 Id., 349.)

Patterson vs. P. & C. Rlwy. Co. (76 Penn. St., 389) was an
action against a railroad company, for injuries to the plaintiff
by their negligence, and on the trial he offered to prove that
he was a conductor of freight trains of the defendant; that
they had a siding on which coal cars were to be run out to
empty coal on a platform, and it was his duty, as conductor,
to run out on the siding the coal cars brought with his train;
that by reason of the shortness of the curve of the siding, and
its improper connection with the main road, it was dangerous
to run the cars on the siding; that he had notified the super-
intendent and foreman of the railroad of such danger, and
they promised to repair the road so as to avoid it, and re-
quested the plaintiff to continue till the repair was made;
that nothing was done towards the repair, and while the
plaintiff was running his train on the siding, using due care,
the front car, by reason of the shortness of the curve, ran off
the track, and the plaintiff, on the second car, was forced by
the shock from the car, and was injured. The court below re-
jected this evidence; but its judgment was reversed, and it was
held that it should have been received; the court declaring that

the servant's primary duty was obedience, and if, in the discharge of his duties, he was damaged through the neglect of the master, the latter would be liable for the injury, and that if the master subjected his servant to dangers which he ought to provide against, he would be liable for any accident arising therefrom.

In an elementary work of great merit, the author lays down the doctrine that there can be no doubt that where a master has expressly promised to repair a defect, the servant can recover for an injury caused thereby, within such a period of time after the promise as it would be reasonable to allow for its performance, and for an injury suffered in any period which would not preclude all reasonable expectations that the promise might be kept. (Shearm. & Redf. Negl., § 96.)

Where the defect is so glaring that with the utmost care and skill the danger is still imminent, so that none but a reckless man would incur it, then if the servant will engage in the hazardous undertaking, he must be considered as doing it at his peril. But if the defective machinery or appliances, though dangerous, are not of such a character that they may not be reasonably used by the exercise of skill and diligence, the servant does not assume the same risk. He is required to take and will be held responsible for the care incident to the situation in which he is placed, and whether he exercised that degree of caution is a fact for the determination of the jury. The timbers in the present case, though loose and not properly fastened, had been used and were still being used, and the plaintiff might have supposed that by using care they would be entirely safe. He had brought their doubtful character to the attention of his superior, and had received a promise that the necessary repairs should be made. He had a right to presume that his master would be mindful of his rights, and would take the proper steps to secure his safety.

The court, we think, erred in taking the case from the jury, and its judgment will be reversed and the cause remanded. All the other judges concur, except Judge Vories, who is absent.